**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF DELAWARE**

MS PHARMACIES LLC D/B/A GETWELL PHARMACY AND DRUGS

Plaintiff,

v.

IQVIA INC.

Defendant.

C.A. No. _____

# COMPLAINT

Plaintiff MS Pharmacies LLC d/b/a Getwell Pharmacy and Drugs ("Getwell" or the "Pharmacy" or "Plaintiff") by and through their attorneys of record, Buchanan Ingersoll & Rooney, PC, as and for this Complaint in this action (the "Complaint") against the named Defendant alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff, MS Pharmacies LLC d/b/a Getwell Pharmacy and Drugs (hereinafter referred to as the "Pharmacy") is a Georgia limited liability company with its principal place of business at 2579 Lawrenceville Highway, Suite Al, Decatur, GA 30033.

2. Upon information and belief, IQVIA is a North Carolina corporation with its principal place of business located at 4820 Emperor Blvd Durham, North Carolina, 27703.

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and Plaintiff and Defendant are citizens of different states.

4. Venue is proper in this Court pursuant to clause 21 of the Agreement between the Parties which provides that "any dispute between [Plaintiff] and [Defendant] arising out of or

relating to this Agreement will be heard by and be subject to the exclusive jurisdiction of the State and federal courts of Delaware."

## STATEMENT OF FACTS

### A. The Parties

1. Plaintiff is an independently owned pharmacy licensed by the Georgia Board of Pharmacy.

2. IQVIA is a service processor which allows pharmacies to render pharmaceutical services to eligible persons and subscribers in connection with sponsor programs administered by IQVIA.

3. IQVIA contracts with independent pharmacies by enrolling these pharmacies as participants in IQVIA's pharmacy network. Through IQVIA, the pharmacies serve their specific patients by participation in a variety of pharmacy benefit plans offered by health insurers and oftentimes managed by pharmacy benefit managers ("PBMs").

4. More specifically, IQVIA enters into contracts with various independent pharmacies in its pharmacy networks so that the pharmacies may service individuals whose pharmacy benefits are considered eligible through IQVIA.

5. The Pharmacy entered into an agreement with IQVIA for IQVIA to perform its functions of service processor for the Pharmacy and the parties agreed to perform according to the terms of the agreement (the "Agreement"). For example, under the Agreement, the Pharmacy provides to any Member applying for the benefits and services for Covered Drugs for which such Member is eligible pursuant to a Plan Announcement.

6. When Plaintiff renders pharmacy services, including by dispensing medication to a patient who receives their prescription drug coverage through a company that contracts with a

PBM to administer the benefit, the PBM remits payment to IQVIA who then, in theory, remits the payment to the Plaintiff.

7. Under section 4(iii) of the Agreement, IQVIA was to process claims promptly, not less often than once in a fourteen (14) day period.

8. Under section 7(ii) of the Agreement, IQVIA was to process submitted claims for Covered Drugs at least once every calendar month and pay Plaintiff the amounts within thirty (30) days of receipt by IQVIA of funds from Sponsor[1].

**B. The Dispute**

9. As part of the Agreement and as stated above, IQVIA agreed to provide Plaintiff with a host of services including, but not limited to, claim reconciliation and payment, and handling all processing issues Plaintiff encountered related to the pharmaceutical services rendered.

10. IQVIA systematically failed to perform pursuant to the Agreement with respect to its obligation to provide proper claims reconciliation and remit monies due and owing to Plaintiff for claims submitted and adjudicated with various PBMs and other payers.

11. Plaintiff has never received full remittance for its claims since the inception of the parties' relationship.

12. Under the Agreement, IQVIA had the right to audit the Pharmacy.

13. On or about September 26, 2023, Plaintiff sent IQVIA a demand letter for payment on a number of remittances which Plaintiff never received ("Unpaid Claims") and demanded a return of funds amounting to $827,460.15 ("Demand Letter").

[1] "**Sponsor**" means the sponsor of the co-pay card or coupon program with whom Processor (i.e. IQVIA) has contracted to provide administrative services with respect to a co-pay card, cash discount card or other similar program.

14. The Unpaid Claims consisted of claims submitted to Processor in 2022 and 2023, but the Pharmacy was never notified of any formal demand for repayment.

15. Up until this point, IQVIA routinely audited the Pharmacy but did not issue any findings, demands for repayment, or otherwise state that payments for unrelated claims would be offset or withheld.

16. IQVIA failed to respond to Plaintiff's Demand Letter until late October.

17. Finally, on November 1, 2023, the Parties engaged in a meet and confer where IQVIA responded to Plaintiff's demand letter stating that some of the Unpaid Claims would have documentation issues where the Pharmacy would not be able to provide satisfactory information.

18. After the November 1, 2023 discussion, IQVIA did not send an audit to the Pharmacy nor did IQVIA reverse any of the claims and yet continued to withhold payment of claims submitted by the Pharmacy.

19. Notably, IQVIA's issues with a portion of the Unpaid Claims were moot where the Unpaid Claims were already approved through the card program administered and were supposed to be paid (i.e., IQVIA received the funds from the Sponsor but failed to remit the payment to Plaintiff).

20. Moreover, IQVIA could have reversed the claims it believed to be improper after an audit, but up to the date of the Demand Letter and thereafter, IQVIA did not reverse any claims.

21. During the November 1st meeting, IQVIA agreed to provide a list of associated claims and questions which the Pharmacy would have to answer related to the claims which IQVIA claimed were improper.

22. On November 22, 2023, the Pharmacy followed up with IQVIA, requesting that IQVIA provide the list of the alleged improper claims and questions.

23. On November 29, 2023, IQVIA requested that the Pharmacy re-engage with IQVIA's audit team to submit information and requested documentation to reconcile any discrepancies in the alleged improper claims.

24. Shortly thereafter, the Pharmacy provided responses to three audits previously conducted by IQVIA:

a. An audit dated March 24, 2023, IQVIA sent a notice of a periodic random audit related to seven (7) claims submitted between June 2, 2022 and November 11, 2022 ("Case 1").

b. An audit dated July 12, 2023, IQVIA sent a notice of a periodic random audit related to eleven (11) claims submitted between March 30, 2022 and June 27, 2023 ("Case 2").

c. An audit dated September 8, 2023, IQVIA sent a notice of a periodic random audit related to ten (10) claims submitted between January 20, 2023 and August 10, 2023 ("Case 3").

25. At all relevant times the Pharmacy cooperated and submitted the requested prescriptions, patient information, receipts, shipping records, related to those claims which IQVIA identified.

26. On or around March 11, 2024, the only discrepancies which remained at issue amounted to approximately $40,000 ("Discrepancies"). These discrepancies were reflected in Case 1, Case 2, and Case 3.

27. Despite the Pharmacy's submissions of the requested documents, IQVIA continued to allege that the discrepancies amounting to $40,000 remained and continued to withhold all of the other claims submitted by the Pharmacy pursuant to the recent audit requests.

28. Since the Demand Letter, IQVIA continues to withhold payment of additional claims submitted by Plaintiff, and the amount which IQVIA was withholding increased, amounting to approximately $1.7 million (including the original Unpaid Claims and new claims submitted).

29. As of date and despite multiple requests from Plaintiff, IQVIA has not provided any rationale for withholding $1.7M from the Pharmacy nor did IQVIA provide any rationale as to why the information provided for Case 1, Case 2, and Case 3 was insufficient to resolve the discrepancies in the claims.

30. In accordance with the Agreement, Plaintiff requests that IQVIA immediately release all of the funds improperly withheld by IQVIA amounting to approximately $1.7 million.

## COUNT ONE
### *Breach of Contract*

31. Plaintiff repeats and re-alleges each of the allegations set forth in the paragraphs above as if set forth at length herein.

32. The Pharmacy contracted with IQVIA according to the terms of the parties' Agreement.

33. The Agreement governs the rights and obligations of the Parties' contractual relationship.

34. At all times relevant, Plaintiff performed in accordance with all material terms of the contract and IQVIA never terminated its relationship with Plaintiff.

35. IQVIA, however, did not perform its obligations under the contract, including but not limited to, not processing claims promptly as per the terms of the Agreement and not providing payment of processed claims.

36. IQVIA breached the Agreement by failing to properly remit payment to Plaintiff on a regular basis.

37. Furthermore, IQVIA is in further breach of its duty to collect and transmit payments to Plaintiff, as it is deficient in monies owed to Plaintiff in an amount of at least $1.7 million.

38. IQVIA materially breached its obligations under the parties' Agreement.

39. As a direct result of that breach, Plaintiff has suffered damages.

40. Plaintiff demands judgment against the Defendants for compensatory damages, and statutory penalties, together with interest and costs of suit, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

## COUNT TWO
### *Breach Implied Covenant of Good Faith and Fair Dealing*

41. Plaintiff repeats each and every allegation set forth above, as if set forth more fully herein.

42. In every contract there is an implied covenant of good faith and fair dealing which encompasses any promise that a reasonable person would be justified in understanding was included in the contract.

43. The Agreement contains an implied covenant of good faith and fair dealing and is subject to the same.

44. The Agreement constitutes a valid, legally enforceable contract.

45. The Agreement confers upon IQVIA substantial discretion to establish terms and conditions for using IQVIA as a processor.

46. IQVIA has abused this discretion and violated the implied covenant of good faith and fair dealing.

47. Specifically, IQVIA has violated the implied covenant of good faith and fair dealing by failing to remit withheld payment without any legal basis whatsoever in the governing contract and/or state and/or federal law.

48. IQVIA has exceeded the limits of reasonableness and violated the covenant of good faith and fair dealing by withholding payment from Plaintiff for approved claims and without providing justification for withholding payment.

49. By breaching the implied covenant of good faith and fair dealing as outlined above, IQVIA has deprived Plaintiff the benefit of its bargain.

50. As a direct and proximate result of IQVIA's actions in breaching the implied covenant of good faith and fair dealing, Plaintiff suffered and will continue to suffer significant damages.

51. Defendants' conduct constitutes a breach of the implied covenant of good faith and fair dealing, resulting in damages to the plaintiffs.

52. Plaintiff demands judgment against the Defendants for compensatory damages, and statutory penalties, together with interest and costs of suit, in an amount in excess of the jurisdictional limits of this Court, together with interest as well as the costs and disbursements of this cause of action.

**PRAYER FOR RELIEF**

Plaintiff incorporate by reference each and every paragraph of this Complaint as through set forth here in full and further pray:

So far as the law and this Court allows, Plaintiff demands judgment, and reserves the right to pursue, against the Defendant on each count as follows:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Consequential damages;

c. Disgorgement of profits obtained through unjust enrichment;

d. Punitive damages with respect to each cause of action;

e. Attorney's fees;

f. Costs of this action;

g. Pre-judgment and all other interest recoverable; and

h. Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

Plaintiff reserves the right to seek additional damages, and reserves the right to pursue, any and all additional damages based on information discovered through the course of discovery.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all of the triable issues of this complaint.

**BUCHANAN INGERSOLL & ROONEY, PC**

*/s/ Geoffrey G. Grivner* __________________
Geoffrey Grivner (#4711)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801-7407
Tel. (302) 552-4207
Fax (302) 552-4295

OF COUNSEL:
Lucas W. Morgan
Buchanan Ingersoll & Rooney, PC
550 Broad St., Suite 810

Newark, NJ 07102
Tel. (973) 273-9800
Fax. (973) 273-9430
*Attorneys for Plaintiffs*

Dated: September 16, 2026